Vito J. Titone, J.
On June 26, 1969 the defendant was arrested in Queens County and charged with grand larceny. He subsequently petitioned to be adjudicated a narcotic addict pursuant to section 210 of the Mental Hygiene Law. Since he met the conditions set forth in section 210, his civil commitment under section 206 was ordered on August 25, 1969. The Narcotic Addiction Control Commission (the “ Commission ”) placed him at the Arthur Kill Narcotic Rehabilitation Center for treatment. The grand larceny charge was dismissed as provided in subdivision 3 of section 210 of the Mental Hygiene Law.
On October 11,1969 he allegedly escaped from the Arthur Kill facility, and he was indicted for the crime of escape in the second degree. He now moves to dismiss the indictment, contending that a civilly committed addict cannot legally be indicted for *11 escape from a detention facility and that the escape section of the Penal Law is inapplicable.
Research discloses only two cases in this area, each reaching a contrary result, which are discussed, infra.
The Penal Law defines escape in the second degree at section 205.10:
“ A person is guilty of escape in the second degree when:
“ 1. He escapes from a detention facility ”.
Section 205.00 (subd. 1) says a “ detention facility” means any place used for the confinement, pursuant to an order of a court, of a person (a) charged with or convicted of an offense, or (b) charged with being or adjudicated a youthful offender, wayward minor or juvenile delinquent, or (c) held for extradition, or (d) otherwise confined pursuant to an order of a court.” And, section 1000.5 of title 14 of the Official Compilation of 'Codes, Rules and Regulations of the State of New York (14 NYCRR 1000.5) states:
“ The following facilities designated for the supervision of narcotic addicts are hereby declared to be detention facilities within the meaning of this Part and of Article 205 of the Penal Law.
(a) Commission facilities :
(14) Arthur Kill Rehabilitation Center ”.
It seems clear that the Center at Arthur Kill is a i£ detention facility ” as defined in section 205.00 of the Penal Law, that the defendant was there pursuant to an order of a court, and that his alleged departure on October 11 falls squarely within the Penal Law’s definition of escape in the second degree.
The defendant points out that subdivision 1 of section 211 of the Mental Hygiene Law requires the Commission to establish regulations concerning the custody, release, etc. of addicts certified to its care, and that subdivision 2 provides that one who escapes while confined in a Commission facility shall be declared a delinquent and that such a declaration “ shall interrupt the period of the commitment Subdivision 3 gives the Commission the power to issue a warrant for the arrest of an escapee.
All this appears to have no relevance to the fact that the defendant is guilty of escape in the second degree, if the allegations in the indictment are proved. No statutory provision or legislative history or case has been cited which justifies a claim that the Mental Hygiene Law or the regulations of the Commission were intended to supplant the escape provisions of the Penal Law.
*12 In fact, former subdivision 2 of section 211 of the Mental Hygiene Law provided that a criminally convicted addict who escaped from a Commission facility would be guilty of a misdemeanor. This provision was specifically repealed by the Legislature (L. 1968 ch. 465), leaving only article 205 of the Penal Law to deal with escaped addicts, whether they be civilly or criminally committed.
If the defendant’s contentions were upheld it could seriously undermine the narcotic rehabilitation program. The defendant asserts that the only “penalty” for an escape should be the provisions of subdivision 2 of section 211 of the Mental Hygiene Law, which as pointed out provides merely that the time lapse consumed for the duration of an escape will not be credited toward the escapee’s period of commitment. Addicts would continually attempt to escape were this the sole deterrent. If they are caught they lose relatively little, and if they are not, their illegal end is accomplished. A facility would spend more time concerning itself with these constant attempts than in curing its patients. Successful rehabilitation is difficult, and this sort of atmosphere would make it practically impossible.
Another result could be the emasculation of section 210 of the Mental Hygiene Law. Where the commitment proceedings are originated under section 210, which was the case here, certain conditions must be fulfilled,, three of which are that the District Attorney, the Judge and the Commission all must agree to permit a person charged with a crime to be civilly committed (Mental Hygiene Law, § 210-a). If they do agree and he is so committed, the criminal charge must be dismissed. District Attorneys would be loath to drop serious criminal charges and allow commitment where the felon could later escape or attempt to escape from a Commission facility with relative impunity. Similarly, the N. A. C. C. would not be anxious to accept such individuals in view of the threat of disruption discussed above. The beneficial provisions of section 210 would cease to have much meaning if their utilization is thus foreclosed.
Accordingly, the motion to dismiss the indictment must be denied. The holding in People ex rel. Farruggio v. Nenna (57 Misc 2d 229) is in accord with the instant ruling, the facts being identical although the procedure was different. (In Farruggio, the defendants brought on a writ of habeas corpus after being charged under subdivision 1 of section 205.10 of the Penal Law while here the defendant moves to dismiss an indictment returned pursuant to the same subdivision.)
The case of People v. Malloy (58 Misc 2d 538) produced a different result. There the court dismissed such an indictment *13 on similar facts, holding that to charge a civilly committed addict with the felony of escape in the second degree would constitute cruel and inhuman treatment under the United States Constitution. This court must respectfully disagree with that conclusion. In any event, the Legislature could have passed special provisions to cover the situation of a civilly committed addict who escapes. It declined to do so, and the court perceives no reason, constitutional or otherwise, to act where the Legislature has refrained from acting.
The Malloy opinion points out that prison is no cure for addiction and that it is senseless to jail a person who escapes from a rehabilitation center. Constant escapes are no cure for addiction either, and the interests of neither society nor the addict are served by running these centers on a revolving door basis.