OPINION OF THE COURT
Steven Lloyd Barrett, J.
The sole question presented by the defendant’s motion is whether an individual confined to a psychiatric facility pursuant to a final order of observation that follows a finding of incompetency after a CPL article 730 exam commits an escape under the Penal Law when he leaves the facility without authorization. I hold that a person who leaves such a facility *289 under these specific circumstances may not be prosecuted for a crime under Penal Law article 205.
Pursuant to CPL 730.40, when a defendant charged with a misdemeanor is found unfit to proceed, the court must dismiss the accusatory instrument and issue a final order of observation which results in placement in a Department of Mental Hygiene facility. In cases where felony charges are pending, a temporary order of observation may be issued placing the defendant in the custody of the Commissioner of Mental Health for a period of 90 days, while holding the criminal charges in abeyance. Under either order of observation, the defendant is remanded to the custody of the Commissioner of Mental Hygiene to a facility under the jurisdiction of the Department of Mental Hygiene. Implicit in the designation of the Department of Mental Hygiene as the agency to receive custody of the mentally incompetent defendant is the policy that such persons are committed for the purposes of care and treatment, and not for detention or punitive incarceration. CPL 730.60 (3) allows the Commissioner of Mental Hygiene wide discretion to discharge a defendant in his custody pursuant to a final order of observation at any time prior to the expiration of such order, or to "otherwise treat or transfer such defendant * * * as if he were a patient not in confinement under a criminal court order.” As noted above, no criminal action remains pending after such a final order of observation.
Article 730’s only specific consideration of the consequences of unauthorized absences pertains to notice to certain designated parties. The 1980 and 1981 amendments to CPL 730.60 insure that the District Attorney of the county where such person was committed, and persons who may reasonably be expected to be potential victims of any violent act committed by the defendant, are notified in advance of any changes to the status of this individual. Further, CPL 730.60 (1) provides that: "If a defendant escapes from the custody of the commissioner, the escape shall interrupt the period prescribed in any order of observation, commitment or retention, and such interruption shall continue until the defendant is returned to the custody of the commissioner.” Pursuant to CPL 730.60 (6) (c), the District Attorney may, upon notice that an individual has departed a facility, seek an order from a superior court declaring the individual as a "dangerous person” and authorizing retention of the person for a period not to exceed six months. Absent is any provision indicating that notwithstand *290 ing the provisions of article 730, the penalties of the Penal Law shall apply for such departures.
I find that, although an individual subject to a final order of observation pursuant to article 730 is in the "custody” of the Commissioner of Mental Hygiene, the provisions of CPL article 730 do not support the conclusion that the nature of this custody may serve as a predicate to a charge of escape in the third degree (Penal Law § 205.05) which is committed when a person "escapes from custody”. For Penal Law purposes, the term "custody”, defined under Penal Law § 205.00 (2), means "restraint by a public servant pursuant to * * * an order of a court.” The Practice Commentaries explain the custody "includes, therefore, confinement in a detention facility as well as restraint under an authorized arrest, i.e., everything from arrest, to detention while awaiting trial, to incarceration in a[n] institution following conviction.” (Hechtman, Practice Commentaries, McKinney’s Cons Laws of NY, Book 39, Penal Law § 205.00, p 435.) Of further relevance to the question of custody is the statutory definition of a "detention facility”: "[A]ny place used for the confinement, pursuant to an order of a court, of a person (a) charged with or convicted of an offense, or (b) charged with being or adjudicated a youthful offender, person in need of supervision or juvenile delinquent, or (c) held for extradition or as a material witness, or (d) otherwise confined pursuant to an order of a court” (Penal Law § 205.00 [1]). It is logical to argue, therefore, that Penal Law article 205 sanctions unauthorized departures from final orders of observation.
However, to decide this case exclusively on the basis of the all-inclusive definition of "custody” would be to ignore several unique aspects of this type of case. CPL article 730, by specifying a possible enhanced detention consequence of such unauthorized absence, provides a clue to a legislative intent here. By establishing the resumption of the period of observation and possible extension grounded upon a finding of dangerousness, the Legislature evinced its intent to continue to regard the detainee not as a criminal but as someone whose action required monitoring for the safety of the detainee and others. Moreover, it would appear more consistent with the intent of article 730 if the above-mentioned consequences specified in the statute were the exclusive consequences. Commencing a separate action for escape under the Penal Law would be contrary to the continued and possibly extended observation of the detainee to ascertain whether to release *291 him as no longer incapacitated or to continue to provide care and treatment. Prosecution also would be unreasonable, in that seeking to prosecute a mental incompetent for acts likely related to his incompetency, including escape, would be precluded under article 730. Moreover, prosecution would be pointless because a person so recently found to be incompetent would likely not be competent to stand trial in a new action for escape initiated so soon after the incompetency finding.
In People v Ortega (127 Misc 2d 717, 725 [Sup Ct 1985], affd, on opn below 118 AD2d 523 [1st Dept]), Justice Lang expressed his similar concerns regarding application of the felony escape statute to one who is held on a temporary order of protection. Justice Lang persuasively refuted the contention that the applicability of the escape statute could be determined without regard to context and exclusively on the basis of the apparent applicability of the statutory language. "The prosecutor’s argument has logical appeal. On its face, the felony escape statute appears to encompass defendant’s act. However, were one to extend the District Attorney’s theory to its logical limit, the result would be that any person who is civilly committed to any facility by order of the court (be it a mental hospital, a halfway house, or a hostel for the mentally disabled) who leaves that facility without permission, could be found guilty of felony escape. Thus, if the prosecutor’s argument is correct a purely literal interpretation of the statute would mean that if a mentally ill parent was certified or committed to a hospital by a court at the behest of the children and the parent left the facility without authorization he would be guilty of a felony escape. (See, Mental Hygiene Law former art 5 for involuntary commitment procedure by a court.) The same reasoning would apply to a parent petitioning the court for commitment of a mentally defective child under Mental Hygiene Law, former art 6, § 124 (1). That section authorizes a court to order a mentally defective person to 'be certified to and confined in any licensed private institution’ (emphasis supplied). If the mental defective escapes from that private institution in violation of the court order, can we assume that the Legislature intended that he be prosecuted for escape?” (127 Misc 2d, at p 725.) I agree with this reasoning and find it equally applicable to the misdemeanor escape statute.
The applicability of the escape statutes to unauthorized absences from such special custodial situations depends upon the unique circumstance of the custody. Justice Lang dis *292 cussed several custodial situations where prosecution for escape would be unjust and plainly unintended. I do not find that result to apply to all forms of custody that are not attached to a judgment of criminal conviction. A person who escapes from pretrial detention obviously may be prosecuted for escape. Courts have applied the escape statute to individuals who absent themselves from institutions where they are confined pursuant to a youthful offender adjudication (see, People v Chesley, 282 App Div 821 [3d Dept 1953]) or where they were confined pursuant to commitment under the auspices of the Narcotic Addiction Control Commission (see, People v Bifulco, 64 Misc 2d 10 [Sup Ct 1969]). In each of these situations, as contrasted to that at bar there is no specific alternate statutory direction for the resumption of care and treatment with possible enhanced detention for such purposes; and there is no equivalent sense of the futility and injustice of seeking to prosecute a mental incompetent for acts likely relating to his incapacitation.
I determine that the legislative intent in this matter may be ascertained by reading with the language of the escape statute, the provisions and purposes of CPL article 730. My conclusion under this standard is that one who leaves a facility within the Department of Mental Hygiene to which he is confined pursuant to an article 730 order of observation may not be prosecuted for escape under the Penal Law. The motion to dismiss the information is granted.